[Civ. No. 30651. Second Dist., Div. Four. Sept. 2, 1966.]

FRED HOWLAND COMPANY, INC., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ROSS HILL, Real Party in Interest.

Crider, Tilson & Ruppé and Robert D. Walker for Petitioner.

No appearance for Respondent.

Irving H. Green and Eliot B. Feldman for Real Party in Interest.

FILES, P. J.—This proceeding arises out of an action to recover damages in the amount of $200,000 for personal injuries. Petitioner here was one of the defendants named in the damage action. On March 25, 1966, the court granted plaintiff's motion to strike said defendant's answer and thereafter entered its default for failure to answer interrogatories, and in addition, ordered that it pay $250 to plaintiff's attorney as a fee. On May 5 the court refused to reconsider its prior order. On May 27 this proceeding was commenced for a review of those orders.

Inasmuch as the question presented here involves the exercise of discretion by the respondent court, the pertinent facts are those which were before that court when it acted. Petitioner has supplied those facts by incorporating in its petition, as exhibits, photographic reproductions of all of the documents in the superior court file. ■ The return filed by the real party in interest (plaintiff in the injury action) denies any information or belief sufficient to answer the allegation of the petition that the copy of the superior court file has been attached. This denial is sham and will be disregarded. (*State Athletic Com.* v. *Massachusetts Bonding etc. Co.,* 46 Cal.App. 2d 823, 828 [117 P.2d 75].) There are some other denials in the return and the replication, but they appear to reflect a disagreement over conclusions. With the superior court file before us as a part of the petition, this proceeding may be determined on the pleadings.

On July 13, 1964, Ross Hill commenced in the southwest district of the superior court his action for $200,000 damages against Fred Howland Company, Inc., a corporation, and Morley Construction Company, a corporation, and others identified by fictitious names. The alleged injury had occurred July 15, 1963, while Hill was working as a pipefitter,

employed by J. Carner Company, a subcontractor in the construction of a large building. Howland was the project manager, Morley was a contractor also engaged in the project, and The Kratter Corporation, later served as Doe I, was the owner of the premises. The insurance carrier for J. Carner Company, which had paid workmen's compensation benefits to Hill amounting to $23,995.68, filed a claim of lien in this amount.

On August 11 an answer was filed on behalf of Morley, through the law firm of Dryden, Harrington, Horgan & Swartz. On August 14 the Dryden office answered on behalf of Howland. Each answer denied that the answering defendant was negligent and pleaded as affirmative defenses the plaintiff's contributory negligence, plaintiff's assumption of risk and, as a *pro tanto* defense against the lien claimant, that plaintiff's employer had been contributorily negligent.

On May 11, 1965, Hill's attorneys served a single set of interrogatories to be answered by Howland, Morley and Kratter. Kratter, appearing through attorneys Schell & Delamer, filed its answers to interrogatories on June 16, 1965. The Dryden office filed answers for Morley on July 15, 1965.

Howland's time to answer interrogatories was extended to June 26, July 30, September 29, October 14 and October 28, 1965. In the process of gathering information the Dryden office concluded there was a possibility of a conflict of interest between its two clients, and because of this, on November 23, 1965, the firm of Crider, Tilson & Ruppé was substituted in place of the Dryden firm as attorneys of record for Howland.[1]

On January 14, 1966, the attorneys for Hill served and filed notice of a motion to be made on January 28, 1966, to strike the answer of Howland for its failure to answer interrogatories. On January 28 there was no appearance and the motion went off calendar. Counsel had consented to a postponement, but had neglected to tell the court. The motion was reset for February 25 and then continued to March 25. On March 24 Howland's attorneys filed partial answers to the interroga-

---

[1]The return of real party in interest denied for lack of information the allegation that the substitution was occasioned by a conflict of interest. The reason for the substitution is set forth in the declaration of attorney Marshall T. Hunt, filed in the superior court in support of petitioner's motion for relief. The declaration is uncontradicted. There is not the slightest basis for inferring that the change of attorneys was unnecessary, or that its purpose was delay.

tories. With respect to questions not answered, the document used the notation "Awaiting information."

The interrogatories which were unanswered related to the following subjects: The details of insurance coverage, including any controversies over coverage; description and location of any accident reports; names and addresses of witnesses and existence and contents of any oral statements made by such persons; existence and location of photographs; detailed statement of facts on which pleadings are based; information about any experts who have been consulted; names, addresses and other information about employers, employees, subcontractors, and the agreements with each; complaints received, opinions held, and instructions given regarding cleanup, maintenance and job safety.

The interrogatories with respect to insurance coverage could not have been answered properly without some legal analysis of the relationships among the various entities who were involved in this construction project, as well as an examination of the policies.

The other unanswered interrogatories called for information which could only be given after a search of detailed records, most of which had been prepared for other purposes, and would not ordinarily be readily available after the construction job had been completed. At least some of these interrogatories could not have been answered without also consulting a number of persons who were with the company at the time of the accident, but who were not necessarily there two years later.

The partial answers were accompanied by a declaration of attorney Marshall T. Hunt, a member of the Crider firm, which stated that at the time the notice of motion was served his office had not received a copy of the interrogatories. Immediately thereafter, on January 18, 1966, a copy was received from the Dryden office. The declaration further explained that the questions must be answered by Mr. W. Robert Little, vice president of Howland, who resides in Miami, Florida, and that the Miami attorneys for Howland had advised that Mr. Little would be in Los Angeles on March 24 or 28.

On March 25, 1966, the motion was argued, and the court made the following order:

"MOTION IS GRANTED. Defendant, Fred Howland, Inc. is ordered to pay to the plaintiff's attorney fees of $250.00."

The attorneys for Hill then filed a request for entry of

default, and on April 20, 1966, the default of Howland was entered.

On April 8, 1966, Howland's attorneys filed a notice of motion for reconsideration of the ruling and for leave to file answers to interrogatories. The notice was accompanied by complete answers[2] to the interrogatories verified by W. Robert Little, and by a declaration of Marshall T. Hunt, which stated in substance as follows:

The Crider firm had been substituted into the case because in the process of the discovery proceedings a possible conflict of interest had been recognized. They received the interrogatories on January 18, 1966, and did not even have an investigation file on the case. Howland was a Florida corporation with its office in Miami. The applicable books and records were in storage in a warehouse in Miami, in boxes that were not indexed. Mr. Hunt had explained this problem to the attorneys for Hill and requested time, but they had refused to consent to any extension beyond March 25. Mr. Little arrived from Miami on March 28 (as the earlier declaration had promised) and arrangements were made with him for immediate removal of records from storage. Upon Mr. Little's return to Miami the necessary records were brought to Los Angeles so that answers could be prepared. The declaration further averred that, upon the basis of the information thus developed, counsel was of the opinion that Fred Howland Company, Inc. had a meritorious defense to the action.

The attorney for Hill filed a declaration in opposition to the motion but it neither contradicted any of the matters stated in the Hunt declaration nor added any new information.

The motion was heard on April 22, and denied by the respondent court on May 5, 1966.

In making its order of March 25, 1966, the respondent court was acting under that portion of Code of Civil Procedure section 2034, subdivision (d), which reads: ". . . if a party or an officer or managing agent of a party willfully fails to serve and file answers to interrogatories submitted under Section 2030 of this code, after proper service of such interrogatories, the court on motion and notice may strike out all or any part

---

[2]The return of real party in interest denies that these answers are complete. All we mean to say is that the answers, on their face, appear to be responsive to all interrogatories, and the superior court could not reasonably have concluded otherwise. If it should later be made to appear that the plaintiff in the civil action is entitled to more information, the superior court will not be barred by anything herein said from ordering or permitting new discovery procedures.

of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose such other penalties of a lesser nature as the court may deem just, and may order that party or his attorney to pay to the moving party the reasonable expenses in making such motion, including reasonable attorney's fees.''

In *Caryl Richards, Inc.* v. *Superior Court,* 188 Cal.App.2d 300 [10 Cal.Rptr. 377], where the appellate court reinstated an answer stricken under section 2034, the court said (at pp. 303, 304): ''One of the principal purposes of the Discovery Act (Code Civ. Proc., §§ 2016-2035) is to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits.* (41 Mich.L.Rev. 205; 50 Yale Law Journal 711; *Pettie* v. *Superior Court,* 178 Cal. App.2d 680, 689 [3 Cal.Rptr. 267].) Its purpose is not 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits.' (*Crummer* v. *Beeler,* 185 Cal. App.2d 851, 858 [8 Cal.Rptr. 698]; *Mitchell* v. *Johnson,* 274 F.2d 394.)

''The statute is to be liberally interpreted so that it may accomplish its purpose. The trial court has a wide discretion in granting discovery and by the provisions of section 2034 of the Code of Civil Procedure it is granted broad discretionary powers to enforce its orders but its powers are not unlimited.

''Paragraph (b) (2) of section 2034, Code of Civil Procedure, and subparagraphs (i), (ii), (iii) and (iv) thereof, under which the court acted here, set forth the power of the court to impose sanctions and the sanctions which it may impose for violation of its orders but they may not be interpreted as granting to the court the power to arbitrarily select the sanction it will impose.

''The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment.''

In the case at bench the respondent court could reasonably have concluded from the information before it on March 25, 1966, that Howland and/or some of its attorneys had not been diligent in preparing and filing answers to the interrogatories. This lack of diligence may be deemed ''wilful'' in the sense that the party understood its obligation, had

the ability to comply, and had failed to comply. The motion made by Hill's attorneys may well have had a salutary effect in bringing about the filing of the answers shortly thereafter. The imposition of an attorney fee for this service was proper under section 2034. ██ But to tie the hands of Howland so that Hill might prove up his $200,000 claim in a default hearing is to impose a punishment which fits neither the offense nor the offender. When the motion came on before the respondent court, partial answers had been filed. The court also had information (from the declarations and from the answers to interrogatories then on file) that Morley was being defended through an insurance company, that the insurance defense firm (Dryden et al.) had belatedly discovered a conflict of interest, that new attorneys (Crider et al.) had not received the interrogatories until after the motion had been made, and that the Crider office had learned that the necessary information lay buried in a warehouse in Miami. These circumstances made the delay understandable, if not altogether excusable.[3]

Even during the period before the motion was made the interrogatories were not ignored. The Dryden office regularly sought and obtained extensions of time, impliedly representing that it intended to file answers later. There was never any basis for inferring that Howland was defying the court or abandoning its defense. When Mr. Hunt stood before the court to oppose the motion on March 25, 1966, he had filed partial answers, and he was representing to the court: (1) that he was unable, as of that moment, to give further answers, and (2) that he intended to complete the answers promptly.

When Mr. Hunt again appeared before the court on April 22 he had tendered his answers in proper form and had supplied the court with another declaration explaining more fully the difficulties which had been involved. Under these circumstances, to strike out the answer and enter a default, and then refuse to reconsider upon the showing made on April

---

[3]In *Weitz* v. *Yankosky,* 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700], a defendant in an automobile collision case was served with summons on June 4, 1961. He claimed he mailed the summons to his insurance company, and the latter claimed it had never been received. A default judgment was entered May 31, 1962. Defendant's first appearance in the action was on August 9, 1963, when he moved to set aside the judgment upon the ground of extrinsic mistake. In affirming the order granting the motion, the Supreme Court held that the evidence supported a finding that defendant had acted reasonably in relying upon his insurance company, and that, if he had been guilty of some negligence, this could be excused because it in no way prejudiced the opposing party.

22, was to inflict unnecessary and excessive punishment upon one litigant and to confer a windfall upon another litigant and his attorneys. The wrong done, at most, was to delay the preparation of the case and cause some additional work for counsel—matters for which a reasonable monetary award would readily compensate.

There is no question of the power of the respondent court to apply the ultimate sanction of default against a litigant who persists in an outright refusal to comply with his discovery obligations. (*Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322 [29 S.Ct. 370, 53 L.Ed. 530]; *Fong* v. *United States,* 300 F.2d 400, 408; *Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71].) But this is not such a case.

The respondent court had the power to reconsider and set aside its March 25 order upon Howland's motion made April 22. (*Jacuzzi* v. *Jacuzzi Bros. Inc.,* 243 Cal.App.2d 1, 26 [52 Cal.Rptr. 147].) The failure of the respondent court to do so was an abuse of discretion which may be corrected by means of an original proceeding in an appellate court. (*Lund* v. *Superior Court,* 61 Cal.2d 698, 708 [39 Cal.Rptr. 891, 394 P.2. 707].)

Let a writ of mandate issue directing the respondent court to set aside the default of the petitioner and the order striking petitioner's answer in action number SW C 4793 entitled *Ross Hill* plaintiff v *Fred Howland Co. Inc.* et al.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied September 27, 1966, and the petition of the real party in interest for a hearing by the Supreme Court was denied October 26, 1966. Mosk, J., was of the opinion that the petition should be granted.