[Civ. No. 34496. Second Dist., Div. Two. Mar. 4, 1971.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
KIRK DOUGLAS et al., Defendants and Appellants.

## COUNSEL

Henry K. Workman, Roger M. Sullivan and Thorpe, Sullivan, Clinnin & Workman for Defendants and Appellants.

Harry S. Fenton, Joseph A. Montoya and Ray M. Steele, for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—Appellants are the owners (defendants) of a 24.52-acre tract in Ventura County. As a consequence of an action brought by the State of California (State) to condemn a certain portion of the tract for freeway purposes a judgment entered on a jury verdict was recovered against owners in the sum of approximately $39,000.[1]

State filed its complaint on April 7, 1967; owners answered on May 15, 1967, claiming damages in excess of $200,000. On May 26, 1967, State pursuant to section 1243.5 of the Code of Civil Procedure filed an application for immediate possession of the property to be condemned. The application was accompanied by the declaration of Mr. Lee Harlan, a right-of-way agent, averring that $96,532 was the amount reasonably adequate to secure the owners of the property of which State sought immediate possession.

Pursuant to court order made on Harlan's declaration State took possession on June 21, 1967, having theretofore made the security deposit required by section 1243.5, subdivision (a) in the amount fixed in the declaration, to wit: $96,532.

On July 14, 1967, by stipulation of State and owners the amount deposited by State was disbursed to the owners

On January 29, 1968, four months before the commencement of trial, defendants' motion for leave to file a supplemental answer was denied by the trial court. No reasons were stated. The proposed supplemental answer alleged in two separate causes of action first, an oral agreement between plaintiff and defendants to settle plaintiff's claim for the sum of $96,531, purportedly effected on August 31, 1967; and second, a promissory estoppel

---

[1]Shortly after the action was filed, State, pursuant to a stipulation discussed *infra*, deposited the sum of $96,532 which was disbursed to owners. The jury determined that owners were entitled to $57,068. The judgment against owners is a sum equal to the difference between the amount awarded to owners and the deposit of $96,532 which owners had collected.

in that defendants had withdrawn the entire amount of the security deposit —which included the sum of approximately $26,000 to Borchard Ranches as payment in full upon a first trust deed—in reliance upon plaintiff's promise, as alleged in the first cause of action.

As the first of their two contentions on appeal, defendants contend that the court abused its discretion in denying defendants' motion for leave to file the supplemental answer.

In terms of its material allegations, the supplemental answer pleaded an oral agreement settling the litigation. It was based on events and conversations which occurred *after* the filing of the answer.

In pertinent part the proposed supplemental answer alleges in the first cause of action thereof:

"On or about August 31, 1967, an agent for [State] entered into an oral agreement with defendants .... , in compromise of defendants' claim contained in said answer, whereby [State] promised to pay the sum of $96,531.00 to said defendants, and said defendants promised to accept . . . in full compromise and settlement of said claim. . . . IV Said agent of . . . State . . . was authorized to enter into said compromise and settlement. V On or about September 8, 1967, . . . [State] orally informed defendants . . . compromise and settlement had been repudiated. . . ."

In pertinent part the second cause of action alleges: "II [State] . . . promised to defendants . . . that [State] would pay $96,531.00 for defendants' interests in parcels 3A, 3B, 3C, 3D, 3E, and the rights of access thereto. . . . IV Defendants did in fact act in reliance upon said promise . . . and such action was of a definite and substantial character, in that defendants, . . . received an executed application for withdrawal of $96,531.00 which had been deposited in Court by [State]; and . . . defendants . . . executed a stipulation providing for the withdrawal of said funds, including the payment of approximately $26,000.00 to the BOCHARD RANCHES as payment in full of the balance of the first trust deed on the property; pursuant to said stipulation of the withdrawal of the deposit, the State took possession of the property and disbursed the sum of $96,532.00."

State contends that the court's ruling was correct because (1) the matters contained in the supplemental answer should have been alleged by way of a cross-complaint; (2) the negotiations as manifested by affidavits filed in support and opposition to the motion show there was no agreement; and (3) even if there was an agreement it was barred by the Statute of Frauds.

"A supplemental answer may be needed *where a defense arises*

after the original answer was filed." (Italics added.) (2 Witkin, Cal. Procedure (1954) p. 1630.) Such procedure is specifically authorized. (Code Civ. Proc., § 464; *Faye* v. *Feldman* (1954) 128 Cal.App.2d 319, 325-326 [275 P.2d 121].)

The various affidavits of the parties in support and in opposition to defendants' motion admit that on May 24, 1967, an offer to settle for the amount of $96,531 was made by the State and that a letter was received in September 1967 in acceptance of said offer. The affidavits then become entangled in conflicting averments and inferences which revolve around an asserted rejection by reason of a counteroffer by defendants for a higher sum, allegedly requested by defendants prior to the time they sent the letter accepting State's offer.

State's contention that the negotiations between the parties did not result in an acceptance of the offer before it was withdrawn; the question whether the offer was in fact withdrawn; and defendant's contentions, implicit in the facts averred, that its attorney never rejected the offer or had no authority to reject it, assuming that he did reject it, are all questions of fact which are within the province of the trier of fact and not an appellate court.[2] They should have been determined on their merits by the trier of fact.

■ On the facts herein detailed an oral agreement of settlement, executed in part by a completed offer by State[3] is clearly and properly alleged. State's contention that the oral settlement agreement is within the statute of frauds is not sound. The supplemental answer does not plead an agreement for the sale and purchase of property.[4]

■ An oral agreement of settlement, such a the one at bench, need not be in writing. (*Nolte* v. *Southern Cal. Home Bldg. Co.,* 28 Cal.App.2d 532,

---

[2]In this connection we have read the affidavits in order to determine whether the conflicts therein can be resolved as a matter of law. We have, as appears from the text, determined that they cannot be so resolved.

[3]William Deseran declares ". . . he is a Right of Way Agent for the State Division of Highways and is engaged primarily in the negotiation for the acquisition of real property and real property interests . . . on May 24, 1967, he confirmed an offer to settle the above-entitled proceeding with Mr. Sullivan for the amount of $96,531.00; that on June 1, 1967, in a conversation in Mr. Sullivan's office he was advised by Mr. Sullivan that negotiations could be resumed in August when Mr. Sullivan would have an appraisal; . . ." The amount referred to was deposited in court on May 26, 1967.

[4]". . . [N]o conveyance of land or passage of title is involved in an oral compromise agreement which pertains merely to the amount of damages recoverable for an easement already transferred from one party to another in condemnation proceedings, and the statute of frauds is therefore inapplicable to such an agreement." (15 Am.Jur.2d 943, citing *Cunningham* v. *Iowa-Illinois Gas & Electric Co.,* 243 Iowa 1377 [55 N.W.2d 552].)

535 [82 P.2d 946]; *Hammond Lumber Co.* v. *Cravens,* 82 Cal.App. 685, 691 [256 P. 428].) When viewed in tandem[5] with the clear policy of the law to discourage litigation and to favor compromise (*Central Basin etc. Wat. Dist.* v. *Fossette,* 235 Cal.App.2d 689, 705 [45 Cal.Rptr. 651]), this rule commends itself to both reason and experience. ■ In the case before us, trial of the factual issues underlying the alleged settlement agreement may well have obviated a long and costly trial relating to the value of defendants' land.

■ State urges as an ancillary point, that even if there were a compromise agreement, defendants should have first presented their claim to the California State Board of Control in accordance with the provisions of the Government Code. (Gov. Code, § 905.2). We hold that the indicated section of the Government Code is not applicable. The settlement here pleaded was of the very lawsuit the State had initiated. There was and could be no question of an independently arising claim; the sole question under the supplemental pleading was that of a settlement.

■ A trial court should exercise liberality in permitting the filing of supplemental pleadings when the alleged after-occurring facts are pertinent. (*Louie Queriolo Trucking, Inc.* v. *Superior Court,* 252 Cal.App.2d 194, 197 [60 Cal.Rptr. 389].)

■ Under the conceded facts of this case, it was error to deny defendants' motion for leave to file the supplemental answer. The prejudical nature of the error is apparent since the ruling below prevented defendants from first litigating an issue which might have been decisive.

■ Secondly, appellants urge that it was error to deny them the right to examine Mr. Lee Harlan, State's right-of-way agent concerning his opinion of the value of defendants' land.

The purpose of Harlan's proffered testimony was to support the opinion of defendants' appraisers who testified that there was no significant change in the market between 1965 and 1967 and that the discount approach to value used by appraisers employed by defendants had also been used by State for the same purpose. Harlan had stated that he had examined the property in 1965 and that he had not amended his appraisal thereafter. It

---

[5]We recognize that *Nolte* involved an oral agreement to settle a dispute whose terms were later reduced to writing and executed. Thus, the agreement could be exempted from the statute of frauds by virtue of the fact that it had been performed *and* reduced to writing. Similarly, it is apparent that *Hammond* involved an oral agreement to forebear from the foreclosure of a lien and is therefore, on its narrow facts, distinguishable from the case at bench. However, we find sufficient support in these cases, especially when read together with *Cunningham* (fn. 4, *supra*) for our holding that the oral agreement to settle the controversy at bench was not within the purview of the statute of frauds.

will be remembered that the Declaration of Value filed May 26, 1967 to take immediate possession was executed by Harlan. The declaration of May 26 was to be used to impeach Harlan, if that became necessary.

In support of defendants' offer of proof, Harlan was examined at length on *voir dire*.

State contends that the offer of proof was defective since Harlan's testimony as developed during *voir dire* was deficient in several respects. However, the trial court did not sustain the objection to the offer because of defective *voir dire*. Harlan's proffered testimony was excluded by the court's use of the sanctions permitted under Code of Civil Procedure, section 1272.01 et seq.

The offer of proof was made upon a background of facts as follows:

Defendants admit that Harlan's name was not included in the list of expert witnesses required to be served by them on State by virtue of the provisions of Code of Civil Procedure, section 1272.01. Failure to comply with section 1272.01 normally precludes a party from calling the unlisted expert witness for his case in chief. However, "Section 1272.06 (Code of Civil Procedure) allows the court to permit a party who has made a good faith effort to comply with Sections 1272.01-1272.04 to call a witness or use valuation data that was not included in his list of expert witnesses or statements of valuation data." (Legislative Committee Comment-Assembly, Code Civ. Proc., § 1272.06.) At bench, there was a good faith effort to comply with sections 1272.01-1272.04. A list of witnesses was furnished by defendants, although the list did not include Harlan's name. It appears that Harlan had been subpoenaed by defendants and that defendants intended to call Harlan under Evidence Code, section 776 *as if under cross-examination;* the lengthy argument on the subject of Harlan's use was certainly adequate notice to State of defendant's intentions to use Harlan as a witness. Under these circumstances, notice was not required to be in writing. (Code Civ. Proc., § 1272.04, subd. (b).) Harlan was a State employee. His opinions and the bases therefor and his knowledge of and contact with the property in question were presumably well known to State. No prejudice (Code Civ. Proc., § 1272.06, subd. (b)) could have reasonably resulted to State by defendants' failure to alert State by including Harlan's name on the list of experts.

Respondent further seeks to buttress the trial court's exclusion of Harlan's testimony on the ground that the provision of Code of Civil Procedure, section 1243.5, subdivision (e), which proscribes reference during trial to the amount of the security deposit, barred the entirety of Harlan's proffered testimony. *People* v. *Cowan,* 1 Cal.App.3d 1001, 1006 [81 Cal. Rptr. 713], rejects this argument. All the statute forbids is evidence of the

"amount required to be deposited." *Id.* at page 1006. There is nothing in the cited section which prevents the condemnee from calling the State's appraiser as a witness to testify either as to his appraisal or to the amount which, in his judgment, the property was worth, including damages. Harlan's proffered testimony was not excluded by section 1243.5, subdivision (e) of the Code of Civil Procedure.

■ There is some uncertainty in the record whether Harlan appraised the property in 1965 or 1966. In respondent's brief on appeal, it is suggested that the appraisal took place in September 1966. Whether the appraisal took place in 1965 or 1966, it is clear that the amount contained in the Harlan affidavit of May 1967—$96,532—was the result of that single appraisal and that the affected property was not thereafter re-appraised by Harlan prior to May 1967.

Respondent additionally contends that Harlan's offered testimony was properly excluded because his appraisal would have been immaterial and irrelevant since it preceded by approximately two years the date of value (Code Civ. Proc., § 1249) which was April 7, 1967. However, part of the offer of proof comprised the change, or lack of it, in market conditions between Harlan's appraisal and the date of value. That the offer of proof on this point may not be factually conclusive is not a defect in an *offer of proof*. It was the court's ruling which prevented appellants from submitting evidence which the jury might or might not have accepted. The proposed testimony was pertinent and material. (See *People* v. *Cowan, supra,* 1 Cal. App.3d 1001.) ■ Nor do we agree that the testimony of an adverse witness, such as Harlan, was properly excluded on the grounds that it was cumulative. Harlan's appraisal was close to that offered by one of appellants' two expert witnesses. Moreover, the value of expected testimony that apparently has ". . . induced the [State] to make a generous offer" (*People* v. *Cowan, supra,* 1 Cal.App.3d at pp. 1006-1007), as in the case at bench, cannot be overrated, especially in view of defendants' abortive attempt to plead a settlement agreement in the supplemental answer. Harlan's proffered testimony was of critical importance to defendants' case. The weight and significance of testimony given by an adverse expert was of such obvious persuasive value to defendants' case that its exclusion suggests an abuse of discretion by the court below.

In our opinion the exclusion of Harlan's testimony was prejudicial error.

The judgment is reversed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied March 31, 1971.