Filed 9/18/14  Marriage of Smith CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of KIERSTIN and MARK LEE SMITH, | |
| _____ | E056872 |
| KIERSTIN SMITH, | (Super.Ct.No. SBFSS58771) |
| Appellant, | OPINION |
| v. | |
| MARK LEE SMITH et al., | |
| Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Tara Reilly, Judge.

Affirmed in part; reversed in part.

Amanda Marie Francuz and Judith Elaine Hoover; Graves & King and Dennis J. Mahoney, for Appellant.

Holstein, Taylor and Unitt, and Brian C. Unitt, for Respondent Cindy Smith.

No appearance for Respondent Mark Smith.

1

This appeal arises from a discovery dispute in ongoing litigation following the 2002 dissolution of the marriage of appellant Kierstin Smith (Kierstin) and respondent Mark Lee Smith (Mark). The trial court awarded monetary sanctions in the amount of $35,809 payable by Kierstin to real party in interest and respondent Cindy Smith (Cindy), who is Mark's current wife. This sum consists of $3,309 in "actual attorney fees," as well as a further $32,500 as "sanctions for disseminating discovery to a third party in violation of the court[']s order . . . ." (Capitalization omitted.)

For the reasons stated below, we affirm in part and reverse in part the trial court's sanctions order.

## I. FACTS AND PROCEDURAL BACKGROUND

The marriage of Mark and Kierstin was dissolved in 2002, but they remain engaged in litigation regarding child support. As relevant to the present appeal, Kierstin has alleged that Mark is hiding assets in various businesses owned by Cindy, including RE Property Investors, Inc., which was joined as a party to the action in June 2009. Thereafter, Kierstin propounded a set of document requests on RE Property Investors, Inc., disputes arose, and a motion to compel further production of documents followed. On August 2, 2010, the trial court granted Kierstin's motion to compel, but denied any award of sanctions or attorney fees. The court's order—memorialized in a minute order issued by the court and later a notice of ruling prepared by Kierstin's counsel—specifies that any documents RE Property Investors, Inc. produces to Kierstin are to be viewed by Kierstin, her counsel, and her investigators only, and that neither the documents themselves, nor the information therein may be provided to any third parties; the order

2

further includes the proviso that the documents are not to leave counsel's office, with the sole exception that the documents may be provided to the court in a confidential envelope.[1]

RE Property Investors, Inc., was dismissed without prejudice from the action on October 21, 2010.

On May 7, 2012, Cindy[2] moved for sanctions against Kierstin, Kierstin's attorney, Amanda Francuz, and Kierstin's father, Robert Hemborg, for violations of the court's August 2, 2010, order. The motion asserted, among other things, that documents protected by the August 2 order were among documents produced by Mr. Hemborg in response to a subpoena issued on behalf of Print Source, Inc., another of Cindy's companies that Kierstin had sought to join as a party. Under the terms of the August 2 order, Robert Hemborg is a third party who should not have had access to the documents. The motion sought a total of $70,011.84 in sanctions: $3,309 in attorney fees and costs incurred in bringing the motion for sanctions, $41,702.84 in other attorney fees and costs incurred by Cindy and her companies relating to Kierstin's allegations regarding Mark using Cindy's companies to hide assets, and an additional $25,000 in sanctions "for

---

[1] The notice of ruling prepared by Kierstin's counsel somewhat broadens the categories of people permitted to view the documents from the description of the court's minute order: it adds "[Kierstin's] investigators" to the list of authorized viewers. The trial court acknowledges on the record, however, that the notice of ruling accurately reflects its order.

[2] The notice of motion indicates that the motion for sanctions is brought by Cindy alone. As discussed below in more detail, however, Cindy requested sanctions for the benefit of both herself and her company, Print Source, Inc., and the court and the parties treated the motion as if it were brought by both Cindy and Print Source, Inc.

abusing, disseminating, interfering and obstructing the production" of Cindy's documents. The motion also sought what it characterized as "terminating sanctions," requesting that both Cindy and Print Source, Inc. be dismissed as joined parties.[3]

Kierstin, Mr. Hemborg, and Ms. Francuz filed a joint response to the motion that, among other things, denied any violation of the court's order regarding RE Property Investors, Inc.'s documents, and sought attorney fees and sanctions against Cindy and her attorney.

The court, after a hearing, granted in part and denied in part the motion for sanctions. To the extent the motion was brought by Print Source, Inc, it was denied. The court also denied the motion as brought by Cindy with respect to Mr. Hemborg and Ms. Francuz, and awarded them each attorney fees, payable by Cindy and Print Source, Inc., as sanctions for bringing the unsuccessful motion. But it granted Cindy's motion with respect to Kierstin, finding that Kierstin had provided documents to Mr. Hemborg in violation of the court's August 2, 2010, order. The court awarded Cindy a portion of the total amount of monetary sanctions she had requested, ordering Kierstin to pay Cindy $3,309 in fees and costs incurred in bringing the motion for sanctions, and an additional $32,500 as "sanctions" for "[a]busing the receipt of discovery by disseminating it to third

---

[3] At the time the motion was filed, neither Cindy nor Print Source, Inc. had yet been joined as parties, though a motion to that effect was apparently pending. On the same date as the hearing on the motion for sanctions, the court discussed with the parties their agreement to a stipulation joining Cindy and Print Source, Inc. The record before us does not reveal whether such a stipulation was ever actually filed.

4

parties in violation of the Protective Order." The court denied Cindy's request for "[t]erminating [s]anction[s]."

In this appeal, only the award of monetary sanctions, payable by Kierstin to Cindy, is at issue.

## II. DISCUSSION

### A. Standard of Review

The legal basis for the sanctions imposed by the trial court is a matter of dispute in this case: as noted, Cindy's motion was brought, on its face, pursuant to the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) but that does not appear from the record to be the basis on which the court ruled. Regardless, however, we review the court's order for abuse of discretion. (See *County of Los Angeles v. Superior Court* (2005) 130 Cal.App.4th 1099, 1104) [discovery orders reviewed for abuse of discretion]; *People v. Ward* (2009) 173 Cal.App.4th 1518, 1527 [order imposing monetary sanctions under Code Civ. Proc., § 177.5 reviewed for abuse of discretion]; *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177 (*Harbert*) [award of attorney fees and costs under Fam. Code, § 271 reviewed for abuse of discretion].)

We review the trial court's ruling, not its reasoning. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) ["[I]f a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning."].) Under the abuse of discretion standard of review, "there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the

5

permissible range of options set by the applicable legal criteria. [Citations.]" (*Id.* at p. 957.) Additionally, "'[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]' [Citation.]" (*In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 829 [Fourth Dist., Div. Two].) The appealing party has the burden to affirmatively show error. (*Phillips, Spallas & Angstadt, LLP v. Fotouhi* (2011) 197 Cal.App.4th 1132, 1138.)

**B. Analysis**

As noted, the court awarded Cindy $3,309 in attorney fees and costs incurred in bringing her motion for sanctions, and an additional $32,500 as a sanction for violation of the court's order regarding maintaining the confidentiality of RE Property Investors, Inc. documents. For the reasons stated below, only the first of these two sums was within the permissible range of options set by the applicable legal criteria, so we reverse the court's sanctions order with respect to the second amount.

The Civil Discovery Act permits the trial court to "impose a monetary sanction ordering that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (Code Civ. Proc., § 2023.030, subd. (a).) Violation of a court order concerning discovery is a misuse of the discovery process in the meaning of the Civil Discovery Act. (See, e.g., *Electronic Funds Solutions*, *LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1183-1184.) It is well established, however, that discovery sanctions exist "not to provide a weapon for punishment for past violations or penalty for past conduct but to secure

6

compliance with orders of the court. [Citations.]" (*Welgoss v. End* (1967) 252 Cal.App.2d 982, 992 (*Welgoss*).)

Here, the court found that Cindy's reasonable expenses incurred as a result of Kierstin's failure to comply with the court's August 2, 2010, discovery order—namely, the costs of bringing the motion with respect to that violation—amount to $3,309. The additional $32,500 award is unrelated to any of Cindy's reasonable or even actual expenses, but rather was imposed as a "sanction"—that is, as a punishment. As noted, punishment is not an appropriate justification for an award of discovery sanctions.

Cindy suggests that the $32,500 is justifiable not as a punishment, but rather as a portion of her actual and reasonable expenses incurred with respect to protecting RE Property Investors, Inc. documents—the $41,702.84 in attorney fees and costs incurred by Cindy and her companies in conducting discovery in the action other than those expenses specifically related to the motion for sanctions. But the court did not find that Kierstin's discovery activities regarding Cindy's companies constituted a misuse of the discovery process in their entirety—to the contrary, the court reaffirmed that such discovery generally was appropriate. The only misuse of the discovery process found by the court was the improper dissemination of documents produced under the protection of the court's order regarding confidentiality. Since the $32,500 represents not a reasonable expense anyone incurred as a result of misuse of discovery, but rather a punishment for violation of the court's discovery order, it is not justifiable under the Civil Discovery Act. (See *Welgoss*, *supra*, 252 Cal.App.2d at p. 992.)

7

Kierstin contends that not even the $3,309 award was justifiable under the Civil Discovery Act. She complains that the court's August 2, 2010, order protects RE Property Investors, Inc. documents, so Cindy is the wrong party to bring a motion alleging violation of that order: even though Cindy claimed to be the owner, a corporation is a separate legal entity from its owners. Nevertheless, the trial court at least implicitly determined that Cindy's interest in RE Property Investors, Inc. was such that she personally was injured by a breach of confidentiality regarding RE Property Investors, Inc., documents. There is nothing in the record before us that would require the trial court to reach a contrary conclusion, and indeed it appears that Cindy was the sole owner of the corporation, at least as of August 2010.[4] Thus, Kierstin has not affirmatively shown that the trial court's finding that Cindy properly sought relief in her individual capacity for violation of the August 2 order was in error.

Kierstin further contends that there is no evidence in the record that she in fact breached the court's order regarding confidentiality of RE Property Investors, Inc. documents. Although the evidence is not overwhelming, we are not persuaded that the court abused its discretion in this regard. The trial court relied on "circumstantial evidence" that Mr. Hemborg could not have gained possession of RE Property Investors, Inc., documents other than through Kierstin, and concluded that he did possess such documents. The court apparently accepted Cindy's argument that such documents—

---

[4] Thus, Kierstin's argument on reply that Cindy was "situated exactly as Print Source, Inc., was situated" is incorrect: there is no indication that Print Source, Inc. had any ownership interest in RE Property Investors, Inc.

8

including RE Property Investors, Inc., quarterly minutes—were among those produced by Mr. Hemborg in response to a Print Source, Inc. subpoena. Kierstin questions whether the exhibits submitted by Cindy in support of that argument in fact include any documents from the production by RE Property Investors, Inc. But we see no reason why the trial court was required to agree with Kierstin on that point, or to accept Mr. Hemborg's declaration that he had "never sought nor requested others to seek anything other than public records and that he never knowingly received or disseminated any document that was not a matter of public record."[5]

In short, the Civil Discovery Act provides an appropriate justification for the court's award of $3,309 in attorney fees and costs to Cindy, but not its further award of $32,500 in sanctions. We now turn to the question of whether any other source of authority provides an appropriate justification for the latter award. We answer the question in the negative.

It is settled law that inherent authority of California trial courts does not include the power to impose monetary sanctions payable to an opposing party or counsel, no matter whether they are denominated "'attorney fees' or merely 'sanctions.'" (*Yarnell & Associates v. Superior Court* (1980) 106 Cal.App.3d 918, 923.) Rather, the power to

---

[5] We frankly do not follow why a document that has markings "resembling a date and a 'Bates' serial number" added to it should be considered *less* likely to have come from a production than a document that does not, as Kierstin suggests. In any case, however, and regardless of any added markings, Kierstin has not proposed any plausible means by which Mr. Hemborg could have acquired possession of RE Property Investors, Inc. quarterly minutes from a source other than the production protected by the court's August 2, 2010, order.

9

impose such sanctions must be authorized by statute. (*Ibid.*) In addition to the Civil Discovery Act, Cindy has proposed Family Code section 271 as an alternative source of such statutory authority. Family Code section 271 authorizes shifting of attorney fees and costs of family law litigants based on "the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Fam. Code, § 271, subd. (a); see also *Harbert*, *supra*, 212 Cal.App.4th at pp. 1176-1177 [discussing § 271].) An award of fees pursuant to section 271 is "in the nature of a sanction." (Fam. Code, § 271, subd. (a).)

The trial court's award of "sanctions," however, did not comply with the notice requirements of Family Code section 271: nothing in notice of motion or motion papers gave notice that sanctions pursuant to that statute were being requested, nor is there any indication in our record that the possibility of sanctions pursuant to that statute was raised prior to the filing of Cindy's brief on appeal. (See Fam. Code, § 271, subd. (b); *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1529 [discussing notice requirement].) And at least arguably, the court did not limit its award of fees and costs to amounts "payable only from the property or income of the party against whom the sanction is imposed" or the "sanctioned party's share of the community property," as required by section 271. (Fam. Code, § 271, subd. (c).) The court appears to have expected Kierstin to pay the sanctions from financial assistance regularly received from

10

her father.**6** For these reasons, among others, the court's award of $32,500 in "sanctions" payable to Cindy is not justifiable under Family Code section 271.**7**

Other potential sources of statutory authority are also inapplicable here. For example, the broad sanctioning authority granted by Code of Civil Procedure section 128.5 is generally limited to actions filed on or before December 31, 1994, with the exception of awards of attorney fees and costs in connection with anti-SLAPP motions. (Code Civ. Proc., § 128.5, subd. (b)(1); *Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 683.) Code of Civil Procedure section 128.7 addresses specific conduct relating to papers submitted to the court, not violations of discovery orders. (See Code Civ. Proc., § 128.7, subds. (b), (c).) Code of Civil Procedure section 177.5 allows imposition of monetary sanctions "not to exceed fifteen hundred dollars ($1,500) . . . payable to the court . . . ." Here, the court ordered payment of $32,500 to Cindy. (See Code Civ. Proc., § 177.5.)

In short, the award of $32,500 in sanctions does not fall within the permissible range of options available to the court. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 957.) As such, the court abused its discretion, and that portion of the court's order must be reversed.

---

**6** We need not, and do not, decide here whether such assistance would constitute "income" in the meaning of Family Code section 271.

**7** Our finding here is without prejudice to the court's consideration of any properly noticed motion pursuant to Family Code section 271 that may later be filed in the action.

11

## III. DISPOSITION

The order appealed from is affirmed with respect to the award of $3,309 in attorney fees and costs to Cindy, but reversed with respect to the further award of $32,500 to Cindy as sanctions for violating a court order. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

Acting P. J.

We concur:

RICHLI

J.

MILLER

J.